**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RONALD MURRELL AND CHRISTOPHER BRYANT, ON BEHALF OF THEMSELVES AND ALL OTHER PLAINTIFFS SIMILARLY SITUATED, KNOWN AND UNKNOWN, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MUFFLERS 4 LESS III, INC., D/B/A VELASQUEZ MUFFLER & BRAKES 1, AN ILLINOIS CORPORATION | ) ) ) ) |
| Defendant. | ) ) |

Nᵒ. 1:19-cv-3238

**Honorable Sheila M. Finnegan
Magistrate Judge, Presiding**

**PARTIES' REVISED JOINT MOTION FOR
COURT APPROVAL OF FLSA SETTLEMENT**

Plaintiffs Ronald Murrell and Christopher Bryant (the "Named Plaintiffs"), along with opt-in Plaintiffs Michael Huggins, Juan Baez and Kevin Trochez (together the "Plaintiffs") and Defendant Mufflers 4 Less III, Inc. ("M4L" or "Defendant") (collectively, the "Parties") jointly move this Court to approve the Parties' settlements of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*. The terms of the settlement are fair, reasonable, and resolve a *bona fide* dispute between the Parties. In support of their Motion, the Parties state as follows:

1.    On May 13, 2019, Plaintiff Ronald Murrell filed this lawsuit alleging that Defendants violated the FLSA and IMWL by failing to pay them for all overtime hours worked. Dkt. 1.

2.    On June 20, 2019, Plaintiff Murrell filed a First Amended Complaint by which Plaintiff Christopher Bryant joined the case. Dkt. 7.

3.      On September 18, 2019, M4L answered the First Amended Complaint and filed two counterclaims against Plaintiff and Counter-Defendant Bryant. Dkt. 19.[1]

4.      Defendant has denied these allegations and asserted they appropriately compensated Plaintiffs for all hours worked including overtime. Plaintiff and Counter-Defendant Bryant has denied that he breached any of duty of loyalty to M4L.

5.      On February 26, 2021, the Parties consented to the full jurisdiction of the Magistrate Judge. Dkt. 65, 67.

6.      On April 15, 2021, atter extensive settlement negotiations, the Parties agreed to stage-one conditional certification of the Named Plaintiffs' FLSA claims and issued notice to putative class members pursuant to 29 U.S.C. §216(b). Dkt. 70. This Court granted the Parties' Motion. Dkt. 71.

7.      As a result of the Notice period, three (3) additional opt-in plaintiffs joined the matter.[2]

8.      Prior to reaching a settlement, counsel for Plaintiffs and Defendants conducted thorough investigations into the merits of and defenses to the potential claims both informally and

---

[1] Counter-Defendant Bryant moved to dismiss M4L's counterclaims. Judge Coleman dismissed M4L's conversion claim with leave to refile. M4L's conversion claim was dismissed with prejudice as M4L did not refile the conversion claim. The proposed settlement agreement contemplates resolution M4L's remaining counterclaim against Bryant for breach of duty of loyalty.

[2] Defendant was not in possession of contact information, including last known home address, phone number or email address for many of the putative class members who had worked for Defendant within the three years preceding the Complaint. As such, the Parties have stipulated Defendant will not oppose any later-filed claims on the basis of statute of limitations or otherwise for six (6) months from the date the Stipulation is filed on the docket, and that the statutes of limitations of the non-joined class members shall be tolled for six (6) months. The Parties have codified their agreements in the Parties' Stipulation Regarding Tolling of Absent Class Members' Statutes of Limitations. Dkt. __.

through formal written discovery, where Defendant produced the documents and other records available to them and in their possession. Plaintiffs also took the deposition of Defendant's outside accountant. With this information, all Parties had the ability to fully analyze the claims of Plaintiffs and to conduct and exchange potential damage calculations for Plaintiffs. Therefore, the Parties have sufficient information to agree to a settlement.

9.     The Parties have exchanged additional information, engaged in settlement negotiations over the course of many months, which included agreement on a universal damages formula, and reached settlements for all Plaintiffs. Due to the absence of many relevant pay and time records and the fact that the records that were available were difficult or impossible to properly decipher, the Parties agreed on a universal damages formula that was applied to each of the five (5) plaintiffs. This formula contemplated all damage components, including underlying unpaid overtime, FLSA liquidated damages and IMWL statutory interest.

10.     The total settlement amount is $96,415.82, inclusive of attorneys' fees and costs. The settlement amounts attributed to each Plaintiff are specified in Section 8 of each Settlement Agreement. The settlement amounts agreed to by each Plaintiff are based on the application of the agreed universal damages formula to each Plaintiff's dates of employment with Defendant. After negotiations, the Parties reached a settlement. The final settlement amount for each Plaintiff includes underlying overtime wages and additional, negotiated liquidated damages and statutory interest applicable under the FLSA and IMWL. The proposed Settlement Agreement contains mutual releases of claims, and the Parties seek dismissal of the entire lawsuit, initially without prejudice at the time the Court enters an order approving this settlement, and with automatically convert to dismissal with prejudice thirty (30) days after delivery of the Settlement Payment to Plaintiffs' counsel.

11.     Copies of each Plaintiff's Settlement Agreement (five agreements total) are attached to this Motion as Exhibits 1-5.

12.     Court approval of FLSA settlements is necessary to effectuate a valid and enforceable release of FLSA claims asserted. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Larkin v. CPI Corp.*, No. 10-cv-411-wmc, 2011 U.S. Dist. LEXIS 127680, *2 (W.D. Wis. Nov. 3, 2011); *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Under the FLSA, employees may settle their claims if the parties agree on the terms and the court approves the settlement as "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Larkin*, 2011 U.S. Dist. LEXIS 127680, at *2 (*citing Lynn's Food Stores, Inc.*, 679 F.2d at 1355); *see also Hernandez v. Cameo Invs., LLC*, No. 19-cv-356-wmc, 2019 U.S. Dist. LEXIS 186445, *3 (W.D. Wis. Oct. 28, 2019).

13.     If a settlement in a FLSA suit reflects a reasonable compromise, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. A presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a contested FLSA case resulting in settlement as an indication of fairness).

14.     In determining whether a settlement is fair and reasonable, courts consider non-exclusive factors such as: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the plaintiff to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the action through the trial; (7) the ability of the defendant to withstand

a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation. *Black v. Renaissance Learning, Inc.*, No. 15-cv-635-jdp, 2016 U.S. Dist. LEXIS 192763, *14-15 (W.D. Wis. Nov. 10, 2016); *Smoot v. Wieser Bros. Gen. Contr.*, No. 15-cv-424-jdp, 2016 U.S. Dist. LEXIS 57148, *16-17 (W.D. Wis. Apr. 29, 2016).

15.     The Parties' settlement is fair and reasonable and meets the applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, the uncertainties for a favorable outcome, and range of reasonableness of the settlement in light of the best possible recovery. The Parties recognized the risks inherent in proceeding with the litigation. Defendant recognized its potential exposure if Plaintiffs prevailed at trial. Plaintiffs recognized the risk that they could lose on summary judgment or at trial and not recover all or any of their alleged damages. The settlement is also reasonable given that the Parties reached a resolution prior to the commencement of additional discovery on the opt-in Plaintiffs, including class and oral discovery. *See*, *e.g.*, *Black*, 2016 U.S. Dist. LEXIS 192763, *14-15 (prompt settlement benefits all parties by avoiding long, drawn-out litigation, and it spares defendants the cost of continuing to pay its attorneys through a trial).

16.     Additionally, the settlement is within the range of possible recovery. As in many wage and hour claims, the precise nature and amounts of recoverable damages are uncertain. Here, even if a trier of fact ultimately found liability, a range of possible damages existed depending on factors including, but not limited to, the number of alleged overtime hours worked, the amount of Plaintiffs' alleged damages, the Parties and their witnesses' credibility, testimony, Defendants' knowledge, willfulness and good faith, and whether the statute of limitations should be extended to three years and/or if liquidated damages should be assessed.

17.     Should this matter have continued in the absence of a negotiated resolution, the Parties may have engaged in extensive additional discovery as to opt-in Plaintiffs' claims and Defendant's defenses to those claims. The Parties may potentially have moved for summary judgment and, to the extent any such dispositive motions were denied, the case would have proceeded to trial. If Plaintiffs prevailed on their claims, Defendant would potentially be faced with the prospect of a verdict against them and the obligation to pay damages, attorneys' fees and costs. If Defendants prevailed, Plaintiffs faced dismissal of their claims and no recovery.

18.     The Agreement is the product of arm's-length negotiations by Plaintiffs and Defendant, with both sides represented by experienced counsel during the proceedings. It provides relief to Plaintiffs and eliminates the risks the Parties would bear if this litigation continued.

19.     The attorney fee-shifting principles of the FLSA and IMWL have been honored in these negotiations and this settlement and are reflected in the Agreements upon which the Parties seek approval. After extensive negotiations, the Parties have fully resolved all issues related to Plaintiffs' attorneys' fees and costs with Defendants, as reflected in the attached Settlement Agreements. Defendants have agreed to pay Plaintiffs' counsel a negotiated, reduced lodestar fee of $58,322.[3] This negotiated and reduced lodestar amount was achieved by way of ongoing concessions and negotiations and good faith effort to resolve the case by way of settlement. Plaintiffs' counsel ultimately agreed upon a reduced number of hours, resulting in the lodestar fee of $58,322. Additionally, Defendant has agreed to pay costs of $1,005.

---

[3] Plaintiffs' counsels' lodestar fees (ultimately negotiated and reduced to the aforementioned $58,322 in the interest of resolution of claims), were based on following hourly rates of Plaintiffs' counsel and paraprofessional: Jodi S. Hoare (paralegal), $145.00 per hour; Samuel D. Engelson (Associate Attorney), $300 per hour, and John W. Billhorn (Senior Attorney), $575 per hour. Plaintiffs' counsel respectfully requests that this Court approve these reasonable rates.

20. Furthermore, the negotiated, reduced lodestar fee paid by Defendants to Plaintiffs' counsel was separately negotiated without regard to Plaintiffs' compensation. *See Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (wherein the Court found that where fees are negotiated separate and apart from the compensation to Plaintiff, the court should approve the settlement).

21. The terms of the settlement, as contemplated in the Settlement Agreement also reflect Plaintiffs' counsels' additional contractual fee earned by way of fee agreements entered into with each of the opt-in Plaintiffs which generated an additional fee in the aggregate amount of $3,911.38. Defendant does not oppose these additional fees with regard to Plaintiffs' separate attorneys' fee agreement with their counsel.

22. Pursuant to Supreme Court and Seventh Circuit authority, it is proper for Plaintiffs' counsel to receive fees by way of a negotiated lodestar amount under the fee-shifting provisions of statutes like the FLSA, as well as receive a reasonable fee by way of private contractual agreements with counsel's clients. See *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) ("The contingent fee that an attorney earns from his client and the statutory fee that an attorney recovers . . . . represent distinct entitlements . . . . [and] the Supreme Court has recognized that private fee arrangements and statutory fee awards can coexist. *Venegas v. Mitchell,* 495 U.S. 82, 87, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990)."). *Id*. at 640, 642.

23. This District has previously approved Plaintiffs' counsels' fees consisting of both a negotiated, reduced lodestar and fees arising out of private contractual agreements with clients. See *Jones v. Cook County Government LE, d/b/a Stroger Hospital of Cook County,* Case No. 18-cv-07577; See also *Esparza, et al. v. Construction & Design Group, Inc., et al.*, Case No. 20-01707.

24. Given these circumstances, a presumption of fairness should attach to the proposed settlement. *See, e.g.*, *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354-55 (11th Cir. 1982) (to approve FLSA settlement, district court must conclude that it fairly and reasonably resolves a *bona fide* wage dispute and that the lawsuit provided the necessary adversarial context to protect the employee's interests from employer overreaching); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 9, 2001).

25. For all of these reasons, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute and approve the settlement.

WHEREFORE, Plaintiffs and Defendant respectfully request that this Court approve the Parties' negotiated settlement and Settlement Agreements and dismiss all of Plaintiffs' claims in this lawsuit, first without prejudice after Court approval of this settlement, and with prejudice within thirty (30) days after Defendant tenders final payment to Plaintiffs and Plaintiffs' counsel as provided in the Settlement Agreement.

Respectfully submitted,

***Electronically Filed 11/29/2021***

/s/ Samuel D. Engelson
Samuel D. Engelson
Attorney for Plaintiffs
Billhorn Law Firm
53 W. Jackson St., Suite 401
Chicago, IL 60604

/s/ Jeffrey A. Leon
Jeffrey A. Leon
Attorney for Defendant
Pavich Law Group
30 W. Monroe St., Suite 1310
Chicago, IL 60603